IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NATHAN A. GRAHAM, | ) | CASE NO. 3:07 CV 1313 |
| | ) | |
| Petitioner, | ) | JUDGE PETER C. ECONOMUS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| MARGARET BAGLEY, Warden, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |

## Introduction

Before me by referral[1] is the *pro se* petition of Nathan Graham for a writ of habeas corpus under 28 U.S.C. § 2254.[2]  Graham is incarcerated at the Mansfield Correctional Institution where he is serving a 55-year sentence imposed in 2000 by the Hancock County Court of Common Pleas after a jury found him guilty of attempted murder, rape, three counts of felonious assault, kidnapping, and having a weapon while under disability.[3]

Graham's petition raises four grounds for relief related to his trial and sentencing[4] that the State asserts should be dismissed as untimely filed.[5]  Although Graham maintains in his

---

[1] ECF # 3.

[2] ECF # 1.

[3] ECF # 12 (state record) at 102-08.  Graham's conviction also included gun specifications as to the rape and one of the felonious assault charges.

[4] ECF # 1 at 6-11.

[5] ECF # 6 at 14-18.  The State also raises, alternatively, the argument that Graham's claims are procedurally defaulted in part and unexhausted in part.

traverse that any untimeliness should be excused because of his actual innocence,[6] for the reasons that follow, I will recommend that his petition be found to be untimely and, therefore, dismissed.

## Facts

### A.    Underlying offense, trial, and sentencing

The basic underlying facts of the offense as found by the state appeals court[7] are well-established and not contested.[8]  A 13-year-old girl was brutally beaten by several people at a party after she apparently irritated some of the females there by flirting with their boyfriends.[9]  After the assault, the victim was then bound, stuffed in the trunk of a car, and forcibly taken from the party to a shed on Graham's rural property, where she was raped with a hairbrush and threatened with death by a handgun held to her head.[10]  She was finally left at the bottom of a cistern, half-naked and covered with pieces of a porcelain toilet, until Graham returned to take her back to his shed.[11]  There, the victim was rescued by police who

---

[6] ECF # 18 at 5-9.

[7] Factual findings of the state appeals court on its review of the record are presumed correct by the federal habeas court.  *Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001).

[8] Graham has contested in his traverse only the ultimate finding that he was responsible.  *See*, ECF # 18 at 9.

[9] ECF # 12 at 213.

[10] *Id*. at 214.

[11] *Id.*

-2-

were serving a search warrant issued after authorities had been alerted that the victim had been taken from the party.[12]

However, because the victim herself did not testify at trial,[13] the facts as to which party-goer was responsible for what offense could only be established to the jury either by the attendees testifying against each other or by jailhouse informants revealing the confessions of cellmates.

This situation predictably produced differing stories as to who was most responsible for the events of that evening, although the testimony of the other persons at the party and of Graham's cellmate pointed to Graham as being most culpable. Just as important, however, this situation also spawned claims almost from the start by Graham that the State and his co-defendants were lying, suborning perjury, hiding exculpatory evidence, or otherwise covering up the truth in order to fix responsibility on him.

Particularly, Graham has argued, as he now does here in the traverse, that the State has kept known exculpatory evidence, specifically the testimony of the victim herself, from being considered at trial or surfacing in time for use in a timely filed habeas petition.[14] It

---

[12] *Id.*

[13] The prosecution later said it never intended to call the victim as a witness so as to spare a young girl the trauma of reliving her ordeal. *See*, ECF # 13 at 282. Graham has said the State intentionally prevented her from testifying because her evidence would exonerate him as her chief assailant. *See*, ECF # 18 at 3. As will be discussed later, Graham attempted to call the victim as a witness for the defense during trial but failed to perfect service of the subpoena. ECF # 13 at 282.

[14] *See*, ECF # 18 at 2-4.

should be noted, however, that despite Graham's claims that he was "unavoidably prevented from discovering the [exculpatory] evidence [of the victim's testimony] which was withheld by the prosecution,"[15] it was Graham himself who attempted to subpoena the victim as a witness on his behalf during trial but failed because he did not properly serve her.[16]

That failure by Graham to perfect service on the victim as a witness highlights the fact that Graham represented himself at trial.  After firing five court-appointed attorneys, Graham finally obtained permission of the court to exercise his right to self-representation if he kept standby counsel with him in the courtroom.[17]

In the end, after the state had dismissed two counts of the indictment following presentation of its case, the jury found Graham guilty of the various counts described earlier and, on December 21, 2000, the trial judge imposed the sentence.[18]

## B.    Direct appeal

Graham, now represented by yet another appointed counsel, then timely filed a notice of appeal, raising two assignments of error:

> 1.    The trial court erred in failing to apprise appellant of all appropriate warnings before permitting him to waive counsel and proceed to trial *pro se.*

---

[15] *Id*. at 3.

[16] *See*, ECF # 13 at 282.

[17] *Id*. at 279-80.

[18] ECF # 12 at 72-86.

-4-

2.    The trial court erred in failing to grant appellant's motion to suppress the search of his residence pursuant to a warrant for the reason that the affidavit in support of the warrant clearly lacked the indicia of probable cause.[19]

The State filed a brief in opposition,[20] and, on November 29, 2001, the Ohio appeals overruled each assignment of error, affirming the decisions of the trial court.[21]  Graham did not elect to file an appeal with the Supreme Court of Ohio.[22]

## C.    Application to reopen the appeal

Following the denial of his direct appeal, Graham, *pro se*, filed a timely application to reopen that appeal.[23]  In that application, Graham alleged:  (1) that his appellate counsel was ineffective for not raising the issue that his indictments were invalid; (2) that the state intentionally withheld production of the victim as an exculpatory witness; and (3) that the state suborned perjury and bribed witnesses to obtain false testimony from those who implicated Graham at trial.[24]

---

[19] ECF # 13 at 167.

[20] *Id*. at 186-211.

[21] *Id*. at 212-221.

[22] *See*, ECF # 6 at 4.

[23] ECF # 13 at 229-238.

[24] *Id.*

The State responded,[25] noting, among other things, that Graham, not the State, was in control of whether the victim testified or not, her ultimate absence being fundamentally due to his failure to perfect the subpoena.[26] Graham filed what he styled as a "rebuttal,"[27] and the appeals court then denied the application.[28]  Graham sought reconsideration of that decision,[29] which, in September, 2002, was denied.[30]  Graham did not appeal.[31]

**D.     Motions for a new trial/to vacate or set aside conviction/to correct sentence**

In March, 2003, Graham filed a *pro se* motion for a new trial and/or to vacate or set aside  his conviction, claiming newly discovered evidence in the form of police reports, statements to police from the victim and various witnesses, as well as affidavits from some of the jurors, show that the State did not provide the defense with all exculpatory evidence prior to trial and that, had such evidence been available, some jurors may have voted differently as to some charges.[32]

----

[25] *Id.* at 278-86.

[26] *Id.*

[27] *Id*. at 289-97

[28] *Id.* at 298-99.

[29] *Id.* at 300-05.

[30] *Id.* at 06-07.

[31] *See*, ECF # 6 at 5.

[32] ECF # 14 at 308-24.

After no response to his motion from the State was immediately forthcoming, Graham then essentially filed for default judgment.[33]  The State responded to that motion by arguing that Graham's original motion for a new trial was never properly before the court since the State was never served.[34]  After a "rebuttal" by Graham in which he contended that he had requested the court to make service on the State,[35] the State responded by claiming that the original motions were untimely, were barred by *res judicata*, and, ultimately, without merit – going into great detail as to how the supposedly hidden police reports came into evidence at trial through testimony of the detectives and how the seemingly exculpatory statements of the victim were refuted by other statements from the victim, all of which was present in the testimony.[36]

After yet more rebuttals and supplements from Graham,[37] the court found first that the motion for a new trial was untimely, having been filed more than two years beyond the 120-day period set for moving for such motions.[38]  It then also found that Graham had not shown cause as to why he was entitled to file a delayed motion.[39]  Moreover, it found that

---

[33] ECF # 15 at 501-03.

[34] *Id*. at 504-06.

[35] *Id*. at 515-17.

[36] *Id.* at 518-47.

[37] *Id*. at 549-613.

[38] *Id*. at 624.

[39] *Id.* at 624-26.

Graham's post-conviction motion to set aside his sentence was also untimely, being filed more than 180 days after the trial transcript was filed in the court of appeals.[40]

Finally, in a lengthy, detailed examination of each of Graham's *Brady* claims, the court found that they were without merit, concluding that, even if all the supposedly suppressed or newly discovered statements of victim were produced at trial, the victim's own statements, taken collectively and together with those of other witnesses, would still show a reasonable juror that "Graham attempted to murder [the victim], that he had taken a substantial step toward effectuating her murder by covering her with bricks while she was in the well, and that he did not remove her from the well until she had passed out. The statements also reflect that Graham forced [the victim] to masturbate with a brush handle, Graham used weapons to threaten her life and cut off her clothing, Graham assaulted [the victim] by choking her with a dog collar, and Graham participated in kidnapping [the victim]."[41]

Graham appealed to the Ohio court of appeals,[42] which, after the State had responded,[43] affirmed the decisions of the trial court.[44] After Graham unsuccessfully sought to certify a

_____

[40] *Id.* at 626-28.

[41] *Id*. at 631.

[42] *Id*. at 640-57.

[43] ECF # 16 at 701-20.

[44] *Id.* at 799-809.

conflict,[45] he filed an appeal with the Ohio Supreme Court.[46]  Again, after the State filed a response,[47] the Ohio Supreme Court in June, 2006 denied leave to appeal.[48]  Graham then sought and was denied a writ of certiorari from the United States Supreme Court.[49]

### E.     Federal habeas petition

On May 4, 2007, Graham filed this petition for federal habeas relief, raising the following four grounds for relief:

1.     Petitioner was deprived of his right to compulsory process by the trial court and by the prosecutor.

2.     Petitioner was deprived of due process by the withholding of exculpatory evidence by the prosecutor.

3.     Petitioner was deprived of due process of law where the prosecutor knowingly presented false testimony.

4.     Petitioner was denied due process of law and jury rights by enhancement of his sentence beyond the statutory maximum based on judicial fact finding of facts (sic) not alleged in the indictment, proven beyond a reasonable doubt, found by a jury or waived or admitted.[50]

---

[45] *Id*. at 810-12.  The appeals court ruled the motion was untimely.

[46] *Id*. at 813-29.

[47] *Id*. at 842-50.

[48] *Id*. at 851.

[49] *Graham v. Ohio*, 128 S.Ct. 39 (2007).

[50] ECF # 1 at 6-11.

As noted earlier, the State, in its return of writ, primarily asserts that this petition is time-barred,[51] arguing in the alternative that the first three grounds for relief are procedurally defaulted.[52]  Graham, in his traverse, essentially concedes that this petition is untimely, but maintains that his March 26, 2003 motion for a new trial should not have been rejected as untimely by the Ohio court since Graham was "unavoidably prevented" from completing the discovery required for that motion by the State.[53]  Thus, Graham argues, tolling of the federal habeas statute should not be denied him since the reason he was untimely with his state postconviction petition was a "state-created impediment."[54]  Graham also asserts that he is actually innocent, offering a deposition from the victim taken in 2004.[55]

Because I will recommend finding that the State's argument is well-founded and that Graham is not entitled to equitable tolling or to claim actual innocence, I will also recommend that this petition be dismissed as untimely.

---

[51] ECF # 6 at 14-18.

[52] *Id*. at 18-26.  The State also contended that ground four was unexhausted since the United States Supreme Court had not yet ruled on the petition for certiorari in the matter concerning that claim.  Because the Supreme Court has denied the petition for certiorari, this argument is moot.

[53] ECF # 18 at 1.

[54] *Id*. at 2.

[55] *Id.* at 3.

## Analysis

**A.    Standard of review – timeliness**

The federal statute governing petitions for the writ prescribes, among other things, that such petitions must be filed within one year of the petitioner's conviction becoming final.[56] The statute further provides that the one-year limitations period may be tolled by the time a properly filed application for postconviction relief is pending in state courts.[57]

Initially, in computing the one-year limitations period, the United States Supreme Court has recently held that the 90-day period within which a petitioner may seek a writ of certiorari from that Court does not affect the start of the one-year statutory habeas limitations period.  In *Lawrence v. Florida*,[58] the Court concluded that, because its proceedings are not part of a state's postconviction review process, the statute's tolling provision, specifically applicable only to properly-filed state postconviction applications, is not triggered by filing a petition for a writ of certiorari in that Court.[59]

Next, as to state postconviction filings themselves, courts are clear that an application for state postconviction relief that is not timely filed may not statutorily toll the federal

---

[56] 28 U.S.C. § 2244(d)(1)(A).

[57] 28 U.S.C. § 2244(d)(2).

[58] *Lawrence v. Florida*, 549 U.S. 327, 127 S. Ct. 1079 (2007).

[59] *Id*. at 1083-84.

habeas limitations period since time limits are a condition to proper filing.[60] Moreover, even if the state postconviction petition is properly filed, the limitations period will only be tolled during such time as that application is pending before the state court; even a properly filed application does not restart the federal habeas limitations clock afresh.[61]

Even if statutory tolling is not available, however, a petitioner may be entitled to equitable tolling of the federal habeas time limitation period under limited circumstances.[62] The Court in *Lawrence* stated that a federal habeas petitioner seeking equitable tolling must show "'(1) that he has been pursuing his right diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing."[63]

Notwithstanding that the Supreme Court has not directly held that equitable tolling is available to a habeas petitioner, the Sixth Circuit has concluded that equitable tolling is available in habeas cases[64] and would be evaluated according to the rubric of *Andrews v.*

---

[60] *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005); *Artuz v. Bennett*, 531 U.S. 4, 8 (2000).

[61] *See*, *Waldron v. Jackson*, 348 F. Supp. 2d 877, 883 (N.D. Ohio 2004).

[62] *See*, *Lawrence*, 127 S. Ct. at 1085 ("We have not decided whether § 2244(d) allows for equitable tolling."); *Pace*, 544 U.S. at 418 n.8.  The Supreme Court in *Lawrence* and *Pace* stated explicitly that it has not determined whether equitable tolling is applicable to the AEDPA statute of limitations.  But in both cases the Court was willing to assume that equitable tolling was available for the limited purpose of showing that the petitioners were not entitled to such tolling.

[63] *Lawrence*, 127 S. Ct. at 1085, quoting *Pace*, 544 U.S. at 418.

[64] *Keenan v. Bagley*, 400 F.3d 417, 421 (6th Cir. 2005); *see also*, *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004).

-12-

*Orr*.[65]  According to that test, factors to be considered in evaluating a claim of equitable tolling are:  "(1) lack of actual notice of filing requirement; (2) lack of constructive notice of filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the notice requirement."[66]  The Sixth Circuit has also stated that these specified factors are not comprehensive or always relevant but that equitable tolling claims are to be evaluated on a case-by-case basis.[67]

In addition to these factors, the Sixth Circuit has also held that equitable tolling of the habeas limitations statute may be available upon a "credible showing of actual innocence"[68] under the standard put forward in *Schlup v. Delo*.[69]  According to this test, a petitioner whose claim is otherwise time-barred will be permitted to have his claim heard on the merits if he can demonstrate, through new, reliable evidence not available at trial, that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt.[70]

---

[65] *Keenan*, 400 F.3d at 421 (citing *Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir. 1988)).

[66] *Id*.

[67] *Id*., citing *King v. Bell*, 378 F.3d 550, 553 (6th Cir. 2004).

[68] *Souter v. James*, 395 F.3d 577, 602 (6th Cir. 2005).

[69] *Schlup v. Delo*, 513 U.S. 298 (1995).

[70] *Souter,* 395 F.3d at 590 (citing *Schlup*, 513 U.S. at 327).

To that end, the Sixth Circuit has clarified that actual innocence here means factual innocence, not legal insufficiency.[71]

## B.  Graham's petition is untimely.

Initially, there appears to be no dispute that, absent tolling of some kind or a credible claim of actual innocence, this petition is untimely pursuant to the statute.  As noted by the State, Graham's one-year limitations period began running on January 13, 2002, or 45 days after the Ohio appeals court affirmed his conviction and Graham chose not to appeal to the Ohio Supreme Court.[72]  The limitations period was tolled by Graham's timely-filed Rule 26(B) application and by the resulting motion to reconsider its denial.[73]  However, Graham's next two post-conviction motions, filed in March, 2003, were found to be untimely filed and so did not toll the limitations period.[74]  Thus, the September, 2004, motion to correct his sentence was already beyond the one-year federal limitations period and so, like all Graham's subsequent state filings, was of no effect on that period.[75]

As Graham himself appears to recognize in his traverse, the March, 2003, motions – which were ruled untimely filed by the state court – are the key to determining if this federal

---

[71] *Id.* (citing *Bousley v. United States*, 523 U.S. 614, 623 (1998)).

[72] ECF # 6 at 15.

[73] *Id*. at 16.

[74] *Id.*

[75] *Id.*

petition can survive the State's challenge of untimeliness.[76]  If no basis for equitable tolling exists, or if actual innocence cannot be established, the petition here must be found untimely.

**C.    Equitable tolling is not available to excuse Graham's untimeliness.**

Graham's first argument for equitable tolling here is that his untimeliness in filing his two March, 2003, post-conviction motions in state court was due to the State itself blocking him from obtaining the evidence he needed to support those motions.[77]  Graham's "proof" that the State impeded him from timely filing his 2003 motions is part circular reasoning and part an attempt to avoid what amounts to a procedural default.

First, Graham seems to claim that because he did not complete the deposition of the victim until after these motions were already judged untimely, any lateness in conducting the deposition must be proof that such lateness was inevitable and unavoidable.[78]  Plainly, the mere fact that the deposition was not completed before a certain time is not proof that it could not have been so completed.  Still less is it evidence that any delay in conducting the victim's deposition was the fault of the State, transferable from that event to the filing of the motions.

Further, as the state appeals court observed in rejecting the same argument, Graham's claims of state-created impediments to discovery as grounds for a delayed motion for a new

---

[76] *See*, ECF # 18 at 4, where Graham observes that "while not timely filed," his post-conviction motions should be deemed "properly filed" if he can show that he "was unavoidably prevented from obtaining the evidence upon which [those motions were] based within the time period set forth by the rules...."

[77] *Id*. at 2-4.

[78] *Id*. at 3.

trial were not properly before the court because Graham had not first sought leave to file a delayed motion.[79]  The court found that, under Ohio law, a litigant seeking to file a delayed motion for a new trial must first file a motion for leave to file such a delayed motion, showing why he could not file for a new trial within the 120-day statutory time limit.[80]  Only after establishing a reason for untimeliness, will the court then permit the delayed motion to be filed.[81]  The state court found that Graham had both not filed first for leave nor had he shown a reason as to why his motion for a new trial was late.[82]

Here, Graham did not comply with a state procedural rule by filing first for leave to file a delayed motion for a new trial and thus establishing cause for the delay, before filing the delayed motion for a new trial itself.[83]  As such, the state court relied primarily on this failure to obtain leave to deny Graham's motion as untimely.[84]  This is a form of procedural default in that the failure to observe a state rule was the basis for the state court denying consideration of one of the petitioner's constitutional claims.[85]  It is somewhat different from

---

[79] *See*, ECF # 15 at 625-26.

[80] *Id*.

[81] *Id.*

[82] *Id.*

[83] Graham concedes this fact but attempts to minimize it by asserting it is "form over substance."  *See*, ECF # 18 at 4.

[84] ECF # 15 at 625-26.

[85] *See*, *Hannah v. Conley*, 49 F.3d 1193, 1196-97 (6th Cir. 1995).

a standard case of procedural default in that the present effect of the state court's action was not so much in precluding review of a particular claim, but in now precluding the operation of statutory tolling by rendering the defaulted filing improperly filed.  Nonetheless, I believe it is the appropriate analytical framework for examining this situation.

Seen as such, I note first that neither Graham nor the State have used this construct in forming their arguments.  As such, I am mindful that a court should not usually raise the issue of a procedural default *sua sponte*.[86]  However, employing this analysis in this context seems the only proper way to examine the facts of record.

Thus, in reviewing the record in light of procedural default analysis, it is clear that Graham has made no effort here or in any other forum to provide cause as to why he did not first file for leave before filing his motion for a new trial.  Quite apart from his claims that the state impaired his ability to obtain evidence, Graham has not even attempted an argument as to how the state prevented him from filing a motion for leave in advance of his motion for a new trial. Showing some objective factor external to him[87] was the cause of his failure to first file the motion for leave is a necessary element for excusing Graham's failure to properly file the motion for a new trial under the cause and prejudice analysis.

Since Graham has not shown anywhere in this record a basis for concluding that anything beyond himself was responsible for his failure to first file a motion for leave, I

---

[86] *Elzy v. United States*, 205 F.3d 882, 886-87 (6th Cir. 2000).

[87] *See*, *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

recommend finding that there is no basis for overturning the ruling of the Ohio court that his motion for a new trial was untimely and thus not properly filed so as to toll the habeas limitations statute.

**D.    Actual innocence has not been established.**

In addition to seeking a basis for equitable tolling, Graham asserts that he should be able to overcome any untimeliness because he is actually innocent.  As noted earlier, Graham's chief basis for his claim of actual innocence is a deposition of the victim that Graham conducted by phone from prison in late 2004, after his motion for a new trial had been dismissed.  However, in his traverse, Graham contends that his actual innocence is found both in this new deposition and in the record of his prior state motions.[88]

Initially, I note, as was discussed earlier, that the state trial court, in an alternative holding, exhaustively reviewed all the trial testimony, as well as the purportedly new evidence presented in the context of the motion for a new trial, and concluded that any reasonable juror would still have found Graham guilty.

Further, as concerns the new deposition of the victim, it is readily apparent from a review of the record that while the victim's testimony may raise conflicts with the testimony of some of the witnesses as to some details of the crime, her testimony is not conclusive evidence of Graham's actual innocence.

─────────────────────

[88] ECF # 18 at 6-8.

-18-

Specifically, the victim is forthright in admitting that she was under the influence of LSD during her ordeal,[89] impairing her ability to remember details of even such things as remembering how long she was at the party or what she was doing there.[90]  Moreover, despite Graham's persistent questions, the victim does not corroborate his claim that the police invented any of her prior testimony or statements,[91] nor that they pressured the victim specifically to implicate him.[92]

While some parts of this 13 year-old victim's recollections seem to minimize, but not eliminate, Graham's role in her ordeal, placing her imperfect memory, impaired by admitted first-time drug-taking,[93] before a jury along with the clearer, more certain testimony of those who directly implicated Graham does not yield the conclusion that any reasonable juror would have acquitted Graham. I recommend finding that this evidence is not the new,

---

[89] ECF # 18, Attachment at 7.  "Q.  Were you on acid or any other illegal drugs that night?  A.  Yes."

[90] *Id.* at 4-5.  "Q.  How long were you there [at the party] and what were you doing? A.  From what I remember what I was doing, I really don't know.  As far as how long I was there, I couldn't tell you that either."

[91] *Id.* at 23.  "Q.  Did the police add anything [to your statements] that you didn't say? A.  I'm not going to comment on that right at this second, I need to go back and look at my papers."

[92] *Id.*  "Q.  Was any pressure put on you to implicate me?  A.  To implicate you, no. The whole situation, yes.  They pressured me to talk about it a lot."

[93] *Id.* at 8.  "Q.  Had you ever taken acid prior to this night?  A.  No.  Q.  So you didn't know what the effects were going to be?  A.  No."

reliable evidence not available at trial that makes it more likely than not that no reasonable juror would have found Graham guilty beyond a reasonable doubt.

### Conclusion

For the foregoing reasons, I recommend finding that the petition of Nathan A. Graham for federal habeas relief is untimely filed, that such untimeliness is not excused by any equitable tolling, and that this petition should, therefore, be dismissed.

Dated:   December 18, 2008                          s/ William H. Baughman, Jr.
                                                    United States Magistrate Judge

### Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.[94]

---

[94] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

-20-